Argued and submitted March 29, affirmed August 25,
reconsideration denied September 29,
petition for review allowed November 30, 1982 (294 Or 149)

STATE ex rel ADULT AND
FAMILY SERVICES DIVISION,
*Respondent,*

*v.*

BRADLEY,
*Appellant.*

(No. D 8008 66894, CA A22419)

650 P2d 91

Gerald D. Wygant, Portland, argued the cause and filed the briefs for appellant.

Paul J. Lipscomb, Salem, argued the cause for respondent. With him on the brief was Blair, MacDonald, Jensen & Lipscomb, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

This is a filiation proceeding brought under ORS 109.125(1)(b).[1] On August 25, 1980, plaintiff filed a complaint alleging that defendant was the father of a child born out of wedlock and seeking a decree adjudging him to be the father and requiring him to pay child support. Defendant filed a general denial and requested dismissal of the proceeding, contending that the six-year statute of limitations barred the action. The trial court denied defendant's motion, finding the statute of limitations unconstitutional, because it denied the child equal protection of the laws. After trial to the court, a final judgment was entered against defendant, establishing paternity and ordering him to pay $60 per month child support. Defendant appeals, contending that the trial court erred in declaring the statute of limitations unconstitutional and denying his motion to dismiss. We affirm.

This action accrued against defendant on October 7, 1972, the date of birth of the child. At that time, ORS 109.135 limited the time for bringing filiation proceedings to six years.[2] In 1979, the legislature amended ORS 109.135(3) to enlarge the limitation period to ten years.[3] Plaintiff brought this action in August, 1980, and conceded

---

[1] ORS 109.125(1)(b) provides:

"Any of the following may initiate proceedings under this section:

"* * * * *

"(b) Any state agency, if furnishing support to the mother for the benefit of the child or if furnishing services or assistance of any kind because of the birth, or impending birth, of the child."

[2] In October, 1972, ORS 109.135 provided:

"(1) All filiation proceedings shall be commenced in the circuit court and shall for all purposes be deemed suits in equity but either party shall have the right to trial by jury on the issue of paternity.

"(2) All filiation proceedings shall be commenced and tried in the county where either the initiating party or the child resides.

"(3) A proceeding under ORS 7.215, 23.775, 23.795, 46.800, 109.070, 109.125 to 109.165, 109.220 and 109.252 shall be commenced within six years after the birth of the child."

[3] ORS 109.135(3) *(amended* Or Laws 1979, ch 246, § 6) provides:

"A proceeding under ORS 7.215, 23.775, 23.795, 46.800, 109.070, 109.125 to 109.165, and 109.252 shall be commenced within 10 years after the birth of the child."

in the trial court that the six-year statute of limitations applied.[4] Therefore, unless the statute was tolled, or unless some defect in the statute exists, plaintiff's right to prosecute this cause of action ran on October 7, 1978, and defendant must prevail.

■ ■ Plaintiff first argues that the statute of limitations was tolled or, alternatively, that defendant is estopped to rely on the statute as a defense because of his conduct in sending the child cards signed "Dad," encouraging her to call him "Dad" and otherwise acting as though he was her father.[5] To constitute equitable estoppel, or estoppel by conduct, there must be a false representation made by a party with the intention that it should be acted upon by the other party, and the other party must have been induced to act upon it. *Donahoe v. Eugene Planing Mill*, 252 Or 543, 545, 450 P2d 762 (1969). Plaintiff presented no evidence that the child, the mother, or plaintiff failed to bring the action sooner in reliance upon defendant's conduct. Absent the elements of reliance or inducement, there is no equitable estoppel.

Plaintiff's second contention is that ORS 109.135(3) violates the Equal Protection Clauses of the Oregon and federal constitutions in that it discriminates against illegitimate children by requiring them to bring filiation actions within six years of their births or be forever barred from seeking support from their fathers.

■ ■ At the outset, defendant contends that plaintiff has no standing to challenge the constitutionality of the statute, because it is the child's constitutional right, not plaintiff's right, that is being asserted. Defendant does not

---

[4] Although plaintiff conceded in the trial court that there could be no retroactive application of the ten-year statute of limitations, plaintiff argues on appeal that it should be applied retroactively. A review of the record shows that the trial court never addressed the issue, relying on plaintiff's concession that the six-year statute of limitations applied.

[5] When analyzed, the tolling argument and estoppel argument are one and the same. The reason the statute would be tolled is because of some conduct on defendant's part which would estop him from asserting the defense. Plaintiff does not argue to the contrary and presents no other reason why the statute would be tolled. We, therefore, treat the argument as one of estoppel.

appear to have raised that issue before the trial court.[6] Although standing *to sue* is a jurisdictional matter requiring our attention regardless of whether an objection is made below, standing to assert constitutional rights of third parties is not.[7] The United States Supreme Court has stated many times that "limitations on a litigant's assertion of *jus tertii* [third-party rights] are not constitutionally mandated, but rather stem from a salutary 'rule of self-restraint' * * *." *Craig v. Boren,* 429 US 190, 193, 97 S Ct 451, 50 L Ed 2d 397 (1976). Having failed to preserve an objection to plaintiff's standing to challenge the constitutionality of ORS 109.135(3) on behalf of the child, and presenting no compelling reason for us to consider it, defendant is precluded from asserting it on appeal. *See State v. Kral,* 55 Or App 212, 637 P2d 1300 (1981).

On the merits, plaintiff contends that ORS 109.135(3) is unconstitutional as a violation of the child's right to equal protection. The trial court, in denying defendant's motion to dismiss, summarized the argument:

> "The rationale for holding ORS 109.135 unconstitutional is that the opportunity for an 'illegitimate' child to seek support from his or her parents should be identical to the opportunity afforded the 'legitimate' child. The test for legislation which creates a classification based on illegitimacy is that the classification must bear a substantial relationship to the State's interest which is the basis of such legislation. (See *Gomez v. Perez,* 409 US 535, (1973); *State v. West,* 378 So 2nd 1220, (1979); *County of Lenoir v. Johnson,* 264 SE 2nd 816 (1980).)
>
> "Justice requires that all children be treated equally under the law. A disparate treatment of children born in or out of wedlock would be inconsistent with the ideals of fair play enshrined in our Bill of Rights. It is accordingly held that the 'illegitimate' child's right to support from the natural parent is a substantial right and is a right equal to that of the 'legitimate' child's. Hence, any statute limiting

---

[6] The issue of standing may have been raised at the hearing on the motion to dismiss, however, defendant failed to include a transcript of that hearing in the record, and there is no memorandum, pleading or other document before this court indicating an intent on defendant's part to raise the issue below.

[7] The legislature has specifically granted plaintiff standing to bring filiation proceedings on behalf of children, as in this case. ORS 109.125(1)(b). Defendant does not contest that authority.

this right during a child's minority works an illogical injustice on a child born out of wedlock and is constitutionally impermissible."

Subsequent to that ruling, and after argument to this court, the United States Supreme Court held that a Texas statute barring paternity suits brought on behalf of illegitimate children more than one year after birth denied illegitimate children equal protection of the law. *Mills v. Habluetzel,* 456 US 91, 102 S Ct 1549, 71 L Ed 2d 770 (1982). After reviewing its holding in *Gomez v. Perez,* 409 US 535, 538, 93 S Ct 872, 35 L Ed 2d 56 (1973), that "a State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally," the Court stated that:

"the support opportunity provided by this State to illegitimate children must be more than illusory. * * * It would hardly satisfy the demands of equal protection and the holding of Gomez to remove an 'impenetrable barrier' to support, only to replace it with an opportunity so truncated that few could utilize it effectively." 456 US at 97.

The court in *Mills,* however, did not go so far as to declare every statute of limitations pertaining to filiation proceedings invalid, stating that:

"* * * [in] support suits by illegitimate children more than in support suits by legitimate children, the State has an interest in preventing the prosecution of stale or fraudulent claims, and may impose greater restrictions on the former than it imposes on the latter. Such restrictions will survive equal protection scrutiny *to the extent they are* substantially related to a legitimate state interest. [Citations omitted.] The State's interest in avoiding the litigation of stale or fraudulent claims will justify those periods of limitation that are sufficiently long to present a real threat of loss or diminution of evidence, or an increased vulnerability to fraudulent claims." 456 US at 98-99.

Under that analysis, the Court found the Texas one-year statute of limitations to be "unrealistically short" and "not substantially related to the State's interest in avoiding the prosecution of stale or fraudulent claims." The Court focused on obstacles confronting unwed mothers during the child's first year that might encumber a

mother's filing of a paternity suit within 12 months of birth. Concerning the state's involvement, the Court stated:

> "* * * Even if the mother seeks public financial assistance and assigns the child's support claim to the State, it is not improbable that twelve months would elapse without the filing of a claim. Several months could pass before a mother finds the need to seek such assistance, takes steps to obtain it, and is willing to join the State in litigation against the natural father. * * *" 456 US at 100.

■ The decision in *Mills* clearly establishes that short periods of limitation in filiation proceedings are unconstitutional. However, Justice O'Connor, in a concurring opinion in which four of her fellow Justices joined, stated that:

> "A review of the factors used in deciding that the one-year statute of limitation cannot withstand an equal protection challenge indicates that *longer periods of limitation for paternity suits also may be unconstitutional. * * *"* (Emphasis added.) 456 US at 106.

■ ■ In reviewing Oregon's six-year statute of limitations, we find that it is subject to the same constitutional weaknesses as the Texas one-year limitations statute. The obstacles to filing suit within one year of birth may exist several years after the birth of an illegitimate child. The mother may still feel an attachment to the father and be reluctant to bring suit against him or, as in this case, the mother may not want to take the risk that her bringing suit will cause the father to cut off all communication with the child. Because the mother has not yet exhausted all other means of support, the state may not yet be involved in the maintenance of the child until after the child's sixth birthday. *See Mills v. Habluetzel, supra,* (Justice O'Connor concurring), 456 US at 101. Whatever the reasons for failing to bring suit within six years, the person who suffers is the child, who is forever barred from requiring support from his or her father. A legitimate child, on the other hand, may bring suit for support at any time during the child's minority. ORS 109.100. As the Supreme Court stated in *Mills,* any limitation of the period for obtaining support for illegitimate children must be *substantially*

*related* to the state's interest in avoiding stale or fraudulent claims.

We note here that the state's interest in this regard is undercut somewhat by the countervailing state interest in insuring that genuine claims for child support are satisfied. By limiting the time period in which child support payments may be recovered from the natural father of an illegitimate child, any statute of limitation may increase the burden on the state welfare system.

■ ■ Laws relating to inheritance also cast doubt on the importance of the state's interest in preventing stale and fraudulent claims for support of illegitimate minor children. Illegitimate children have a statutory right to inherit from their parents. ORS 109.060. Under ORS 111.095(2), heirship is determined by declaratory judgment proceedings brought under ORS 28.010 to 28.160. ORS 28.040 provides, in part:

> "*Any person interested as* or through *an* executor, administrator, trustee, guardian or other fiduciary, creditor, devisee, legatee, *heir,* next of kin, or cestui que trust, *in the administration* of a trust, or *of the estate of a decedent,* ward or insolvent, *may have a declaration of rights or legal relations in respect thereto:*
>
> "(1)*To ascertain any class of* creditors, devisees, legatees, *heirs,* next of kin or other; or * * *." (Emphasis added.)[8]

There is no other provision for limitation of actions brought under ORS 28.040; therefore, the general limitation of ten years applies. ORS 12.140. The ten years limiting such actions cannot begin to run until the death of the decedent, because a potential heir has no cause of action until that time. The argument that the state is justified in barring the bringing of an action to determine paternity for the purpose of obtaining support for a child after the child's sixth birthday, on the rationale of preventing stale and fraudulent claims, has little weight when one considers

---

[8] A declaration of heirship, under ORS 28.040, was sought in *Decker v. Wiman,* 288 Or 687, 607 P2d 1370 (1980). There the defendant filed a petition to declare that she was the illegitimate daughter and sole heir of decedent more than six years after his death. The case deals with the lack of notice to other heirs of decedent and assumes that the statutory procedure is available to the defendant to seek a declaratory judgment concerning paternity.

that the state allows paternity actions for determination of heirship years after a child reaches majority and as long as ten years after the death of the father from whose estate the child claims the right to inherit.

Even if we ignore the conflicting state interests, however, it does not appear to us that the bringing of a paternity action after six years presents "a *real threat* of loss or diminution of evidence, or an increased vulnerability to fraudulent claims." (Emphasis added.) *Mills v. Habluetzel, supra,* 456 US at 99. This view is shared by courts in other jurisdictions. The Florida Supreme Court, in considering the constitutionality of a four-year statute of limitations for paternity actions, found that the statute bore no rational relationship to the interest of insuring availability of adequate proof on the issue of paternity. In holding the statute unconstitutional, that court stated in *State, Dept. of Health, Etc. v. West,* 378 So 2d 1220, 1227 (Fla 1979):

> "* * * The arbitrary determination that paternity can only be proved in four years creates an impenetrable barrier to an illegitimate child's right to seek support without considering alternatives which deal directly with the problem of proof. * * *"

The Florida Supreme Court went on to say that, although proof of paternity may become more difficult with the passage of time, that possibility cannot be allowed to work an unconstitutional discrimination against illegitimate children.[9] We agree. In the present case, nearly eight years after the child's birth there was sufficient evidence available to enable the trial court to find defendant to be the child's father. Weighing the state's interest in enacting the statutory limitation of six years against the constitutional rights of an illegitimate child to the protection of the laws equal to that afforded legitimate children, we hold that the six-year statute of limitations is unconstitutional.

Because plaintiff filed this suit within the ten-year statute of limitation presently in effect, there is no need

---

[9] Recent scientific developments in blood testing dramatically reduce the possibility that a defendant will be erroneously determined to be an illegitimate child's father. *See* concurring opinion of O'Connor, J. in *Mills v. Habluetzel,* 456 US 91, 96 n 2, 102 S Ct 1549, 71 L Ed 2d 770 (1982).

for us to pass on the constitutionality of the statute as a-mended. It is the law of this state that statutes enlarging periods of limitation apply to existing causes of action that have not been barred by the previous limitation. *Nichols v. Wilbur,* 256 Or 418, 419, 473 P2d 1022 (1970). Because we have held that the six-year statute of limitations is unconstitutional and void, plaintiff's right to bring the action cannot be said to be barred by that statute. Under the 10-year statute, plaintiff was entitled to bring suit on behalf of the child on August 25, 1980. Defendant's motion to dismiss was properly denied by the trial court.

Affirmed.

**GILLETTE, P. J.,** dissenting.

Because the majority opinion recognizes the pertinent considerations in this case, but then unaccountably misapplies them, I dissent.

The question specifically before us is whether Oregon's (then) six-year statute of limitations on cases of this kind denied equal protection of the laws. I find the case upon which the majority relies to be against, not for, the majority's position. In *Mills v. Habluetzel,* 456 US 91, 102 S Ct 1549, 71 L Ed 2d 770 (1982), the Supreme Court, while striking down a one-year Texas statute of limitations, nonetheless specifically and repeatedly acknowledged that *some* statute of limitations was permissible:

"The fact that Texas must provide illegitimate children with a bona fide opportunity to obtain paternal support does not mean, however, that it must adopt procedures for illegitimate children that are coterminous with those accorded legitimate children. Paternal support suits on behalf of illegitimate children contain an element that such suits for legitimate children do not contain: proof of paternity. Such proof is often sketchy and strongly contested, frequently turning on conflicting testimony for only two witnesses. * * *

"Therefore, in support suits by illegitimate children more than in support suits for legitimate children, the State has an interest in preventing the prosecution of stale or fraudulent claims, and may impose greater restrictions on the former than it imposes on the latter. * * * The State's interest in avoiding the litigation of stale or

fraudulent claims will justify those periods of limitation that are sufficiently long to present a real threat of loss or diminution of evidence, or an increased vulnerability to fraudulent claims." 456 US at 98-99. (Footnotes and citations omitted.)

I do not know how anything could be clearer. Our sole function in this case is, or ought to be, answering one question: Does six years give those with an interest in illegitimate children a sufficently long time to provide a reasonable opportunity to make a claim? The answer is yes. No further inquiry is necessary.

I would reverse the trial court and remand the case for entry of judgment for defendant.